MR. JUSTICE MORRISON,
dissenting:
The majority concludes that the “midnight deadline rule” is not available for recourse against the Bank for the following reasons: (1) The subject check was not a “demand item”; (2) the subject check was not presented by Iverson; (3) the midnight deadline rule was waived. I disagree with all three conclusions of the majority.
The majority opinion concludes that the check was not a demand item because it was accompanied by authorization to hold for longer than the usual 24 hour period and to pay when funds were available. The accompanying memorandum may be viewed as an attempt by MLPCA to waive the “midnight deadline rule” but I do not see that as changing the character of what is clearly a demand item. The majority neglects to quote the Montana statute defining demand item. Section 30-3-108, MCA, states:
“Instruments payable on demand include those payable at sight or on presentation and those in which no time for payment is stated.”
The check here was clearly a demand item within the purview of the statute. Apparently the majority feels that since the check was to be held until funds became available that the check was not payable on demand. I would expect that most people anticipate that a bank will only pay a check if funds are available. The holding of this Court runs contrary to the holding in Sun River Cattle Co. v. Miners Bank of Montana N.A. (1974), 164 Mont. 237, 521 P.2d 679. In *293 that case the Montana Supreme Court held that checks similar to the check here at issue were demand items. The Sun River Cattle Company case is not distinguished by the majority but is simply ignored.
The majority opinion finds that Iverson made no presentment in this case. The subject check was made payable to both PCA and Iverson. There was no endorsement on the check but a stamped notation on the back stated: “Credit to the account of the within named payee. Absence of Endorsement Guaranteed.” The check was delivered for collection to First Bank. On its face there is no way of determining whether the check came from PCA or from Iverson or from both of them. In view of the broad wording of Section 30-3-504, MCA, which states that presentment is a demand for payment made by or on behalf of the holder, I fail to see how the majority distinguishes between presentment made by the PCA and presentment made by Iverson. Under the holding of the majority I suppose all payees must make a joint presentment before they can have the protection of 30-4-302.
Finally, I disagree with the majority’s holding that there was a waiver of the midnight deadline rule. First of all, waiver is not sufficient. Section 30-4-103 states:
“(1) The effect of the provisions of this chapter may be varied by agreement except that no agreement can disclaim a bank’s responsibility for its own lack of good faith or failure to exercise ordinary care . . .” (Emphasis added.)
There must be an agreement. The bank officer who attempted to enter into an agreement for extension of the midnight deadline rule lacked authority from the Bank to enter into such an agreement. In fact, the undisputed evidence shows the Bank’s express policy forbid the bank officer to enter into such an agreement. The Bank cannot seek to reply upon the terms of an agreement made by its agent in violation of the express instructions of the principal bank.
The following facts are taken from the trial court’s findings:
“10. Mr. Wempner received the subject check through the mail but instead of taking the check to the collection department of First Bank-Billings pursuant to the established policy of First Bank-Billings for collection as a non-cash item, he kept the check in his desk in a separate file titled ‘Nuernbergor, Montana Cattle Company’. (Jacobson Depo., P. 6-9; Wempner Depo., p. 21, p. 67-68, setting forth normal bank policy; Jacobson Depo., p. 23; Wempner Depo., p. *294 30, p. 67, 1. 2-3, establishing that Mr. Wempner kept the subject check in his desk which violated bank procedure.
“13. Mr. Wempner acknowledged that he was very much aware of the bank’s policy, acknowledged he did not like the limitations mandated by the midnight deadline or the policy of the bank. (Wempner Depo., p. 67-69, p. 62-63, p. 66, p. 15-116.)
“14 Mr. Wempner had no authority to change said bank policy or to request or accept a waiver of said policy. The MLPCA, through Alice Tyanich, was not aware of the policy of First Bank-Billings. (Jackson Depo., p. 8; Wempner Depo., p. 62; Affidavit of Alice Tyanich, Appendix “C.”)”
It is clear that Wempner’s attempt to effectuate an agreement for a waiver of the midnight deadline rule was clearly outside the scope of his authority; no agreement was created; the Bank cannot rely upon Section 30-4-103.
Furthermore, if such an agreement had been made, it would only extend the midnight deadline rule if the Bank acted in good faith. The trial court found that the Bank was acting to benefit its depositor at the expense of the payees on the check. This of course is evidence of lack of good faith but unfortunately is ignored by the majority opinion.
For the reasons mentioned herein I would affirm the District Court.